1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  RICKY LEON SCOTT,                      Case No.  1:19-cv-01079-KES-HBK (PC)

12            Plaintiff,                   FINDINGS AND RECOMMENDATIONS TO
                                           GRANT DEFENDANT'S MOTION FOR
13        v.                               SUMMARY JUDGMENT[1]

14                                         (Doc. No. 60)

15  J. CHAU,                               FOURTEEN DAY OBJECTION PERIOD

16            Defendant.

17

18        Pending before the Court is Defendant J. Chau's motion for summary judgment, filed July

19  3, 2024.  (Doc. No. 60).  Plaintiff filed an Opposition (Doc. No. 62), and Defendant filed a Reply

20  (Doc. No. 63).  For the reasons discussed below, the Court recommends the district court grant

21  Defendant's motion for summary judgment because there is no genuine dispute of material facts

22  as to whether Defendant acted with deliberate indifference to Plaintiff's serious medical

23  condition.

24                       **I.        BACKGROUND**

25        **A.  Procedural History**

26        Plaintiff Rickey Leon Scott is a state prisoner proceeding pro se and *in forma pauperis* in

27  ─────────────────
    [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
28  (E.D. Cal. 2023).

1   this civil rights action filed pursuant to 42 U.S.C. § 1983.  (Doc. No. 28).  Plaintiff proceeds on

2   his Second Amended Complaint, as screened, asserting an Eighth Amendment deliberate medical

3   indifference claim against Defendant J. Chau.  (Doc. Nos. 28, 29, 31).  On July 3, 2024,

4   Defendant timely filed the instant motion for summary judgment. (Doc. No. 60)

5   **B.  Defendant's MSJ**

6   Supporting his MSJ, Defendant submits: (1) a *Rand* notice to Plaintiff (Doc. No. 60-1);

7   (2) a statement of undisputed material facts (Doc. No. 60-2); (3) a memorandum of points and

8   authorities (Doc. No. 60-3); (4) the declaration of J. Chau (Doc. No. 60-4); (5) the declaration of

9   Dr. Edward Younger III (Doc. No. 60-5); (6) the declaration of E. Robinson (Doc. No. 60-6); (7)

10  the declaration of Defendant's Counsel J. Gronna (Doc. No. 60-7); and (8) a Notice of Lodging

11  Transcripts (Doc. No. 60-8).

12  Defendant Chau asserts the undisputed evidence shows he was not deliberately indifferent

13  to a serious medical condition, and that Plaintiff's allegations amount to a difference of medical

14  opinion.  (Doc. No. 60-3 at 6).  Specifically, an ice pack and narcotic pain medication were not

15  medically necessary to treat Plaintiff's right knee pain on April 12, 2018, and discontinuing

16  Plaintiff's Tylenol with Codeine prescription was medically appropriate.  (*Id.*).  In the alternative,

17  Chau contends he is entitled to qualified immunity because a reasonable physician in his position

18  would have believed his conduct was lawful.  (*Id.*).

19  **C.  Plaintiff's Opposition to Defendant's MSJ**

20  On August 5, 2024, Plaintiff filed his Opposition, including 86 pages of exhibits, which

21  consist primarily of Plaintiff's prior filings in this case, discovery requests propounded on

22  Defendant, and Plaintiff's medical records.  (*See* Doc. No. 61 at 8-94).

23  As an initial matter, Plaintiff's Opposition does not comply with the requirement in Local

24  Rule 260 that require:

25          [a]ny party opposing a motion for summary judgment or summary
            adjudication . . . reproduce the itemized facts in the [Defendant's]
26          Statement of Undisputed Facts and admit those facts that are
            undisputed and deny those that are disputed, including with each
27          denial a citation to the particular portions of any pleading, affidavit,
            deposition, interrogatory answer, admission, or other document
28          relied upon in support of that denial.

L.R. 260(b) (E.D. Cal. 2023); *see also* Fed. R. Civ. P. 56(c)(1)(A). Plaintiff responds in scattershot fashion only to a handful of the factual assertions in Defendant's declarations and statement of undisputed facts and, even then, asserts only conclusory denials and does not cite to any documents in the record in support. (*See generally* Doc. No. 62). The Court may deem undisputed those facts which Plaintiff does not properly dispute by citing to relevant portions of the record. *See* Fed. R. Civ. P. 56(e)(2).

For example, Plaintiff disputes the declaration of Nurse E. Robinson, who attests that Plaintiff swung his cane twice at Dr. Chau. (*Id*. at 4-5). Plaintiff states that Robinson's statement "[w]as another material variance from the truth, and therefore, a basis for liability for derogatory falsehood, or grant of Fed. R. Civ. P. 12(c) or Demand for Trial" but does not explain why the assertion is false or cite to any fact in the record to dispute it. (*Id*. at 5). Similarly, as to Defendant Chau's statement in his declaration denying that he refused to provide Plaintiff with medically acceptable treatment, Plaintiff again asserts, "[w]as a material variance from the truth, and therefore a basis for liability for derogatory falsehood . . ." (*Id*. at 4).

Liberally construed, Plaintiff generally reiterates the factual assertions in his SAC, and contends that he alleges a cognizable claim for deliberate medical indifference against Defendant Chau. (*See generally id*.).

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of

1   material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence

2   for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

3   affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477

4   U.S. 242, 248 (1986).

5         If the moving party meets its initial burden, the burden then shifts to the opposing party

6   to present specific facts that show there to be a genuine issue of a material fact.  *See* Fed R. Civ.

7   P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that

8   there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 587.  The

9   party is required to tender evidence of specific facts in the form of affidavits, and/or admissible

10  discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P.

11  56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a

12  material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be

13  shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

14  *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

15  1987).  However, "failure of proof concerning an essential element of the nonmoving party's

16  case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

17        The court must apply standards consistent with Rule 56 to determine whether the

18  moving party demonstrated there is no genuine issue of material fact and showed judgment to be

19  appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

20  "[A] court ruling on a motion for summary judgment may not engage in credibility

21  determinations or the weighing of evidence."  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.

22  2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the

23  nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving

24  party.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  A mere scintilla

25  of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly

26  supported summary judgment motion.  *Anderson*, 477 U.S. at 252.  However, where "opposing

27  parties tell two different stories, one of which is blatantly contradicted by the record" courts

28  "should not adopt that version of the facts for purposes of ruling on a motion for summary

4

1    judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

2          The Ninth Circuit has "held consistently that courts should construe liberally motion

3    papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules

4    strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611

5    F.3d 1144, 1150 (9th Cir. 2010)).  While prisoners are relieved from strict compliance, they still

6    must "identify or submit some competent evidence" to support their claims.  *Soto*, 882 F.3d at

7    872.  Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment

8    if based on personal knowledge and specific facts admissible in evidence.  *Lopez v. Smith*, 203

9    F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory allegations

10   unsupported by specific facts, will not be sufficient to avoid summary judgment.  *Arpin v. Santa*

11   *Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And, where a plaintiff

12   fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to

13   have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

14         The Court has carefully reviewed and considered all arguments, points and authorities,

15   declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and

16   other papers filed by the parties.  The omission to an argument, document, paper, or objection is

17   not to be construed that the Court did not consider the argument, document, paper, or objection.

18   Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible,

19   material, and appropriate for purposes of issuing these Findings and Recommendations.

20         **B.  Eighth Amendment Deliberate Medical Indifference**

21         The Constitution indisputably requires prison officials to provide inmates with reasonably

22   adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To hold an official liable for

23   violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective

24   prong and subjective prong.  First, the inmate must suffer from a serious medical need (the

25   objective prong); and second the official must be deliberately indifferent to the inmate's serious

26   medical need (the subjective prong).  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012),

27   *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014);

28   *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).  A medical need is "serious" if the

1   failure to treat "could result in further significant injury or the unnecessary and wanton infliction

2   of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).  A

3   serious medical need is evidenced by "the existence of an injury that a reasonable doctor or

4   patient would find important and worthy of comment or treatment; the presence of a medical

5   condition that significantly affects an individual's daily activities; or the existence of chronic and

6   substantial pain are examples of indications that a prisoner has a 'serious' need for medical

7   treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992).

8         The "second prong—defendant's response to the need was deliberately indifferent—is

9   satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible

10   medical need and (b) harm caused by the indifference." *Id*. (internal citations omitted).  This

11   standard requires that the prison official must not only "be aware of facts from which the

12   inference could be drawn that a substantial risk of serious harm exists," but that person "must also

13   draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "If a [prison official] should

14   have been aware of the risk, but was not, then the [official] has not violated the Eighth

15   Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d

16   1175, 1188 (9th Cir. 2002).  This "subjective approach" focuses only "on what a defendant's

17   mental attitude actually was." *Farmer*, 511 U.S. at 839.

18         Deliberate indifference is a higher standard than medical negligence or malpractice, and a

19   difference of opinion between medical professionals—or between a physician and the prisoner—

20   generally does not amount to deliberate indifference.  *See generally Toguchi v. Chung*, 391 F.3d

21   1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference

22   of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.").

23   To prevail on a claim involving choices between alternative courses of treatment, a prisoner must

24   show that the chosen course of treatment "was medically unacceptable under the circumstances,"

25   and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*,

26   90 F.3d at 332.

27         Neither will an "inadvertent failure to provide medical care" sustain a claim.  *Estelle v.*

28   *Gamble*, 429 U.S. 97, 105 (1976).  Misdiagnosis alone is not a basis for a claim, *see Wilhelm*, 680

F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

### III. ANALYSIS

#### A. Allegations in Plaintiff's Operative Complaint

The events giving rise to the Second Amended Complaint ("SAC") occurred at North Kern State Prison ("NKSP"). (*See generally* Doc. No. 28). As screened, Plaintiff's SAC alleges a single Eighth Amendment claim for deliberate medical indifference against Defendant J. Chau, a physician at NKSP in connection with his medical treatment for his knee. (*Id*. at 3); (Doc. No. 29).

Liberally construed, on April 12, 2018, Plaintiff was taken to the NKSP medical department a wheelchair after falling near his cell. (*Id*. at 7, 12). Plaintiff claims his right knee was "hot with fever," swollen and painful "as though [he had] Elephantiasis," and gave out because Dr. Chau changed unspecified medications and stopped Plaintiff's pain medications altogether. (*Id*. at 7-8). A nurse, who examined Plaintiff when he arrived in the medical department, went to retrieve an ice pack for Plaintiff's knee. (*Id*.). When she returned with the ice pack, Dr. Chau came out of his office, grabbed the ice pack from the nurse, and told Plaintiff he was not allowing him any treatment. (*Id*.).

According to the incident report attached as an exhibit to the SAC,[2] Plaintiff began to argue with Dr. Chau while swinging a cane toward Dr. Chau. (*Id*. at 13). Officer Mendez told Plaintiff to stand down, but Plaintiff disobeyed, and Mendez took Plaintiff to the ground. (*Id*. at 12-13). Plaintiff was issued a Rules Violation Report ("RVR") for assault with a deadly weapon.

---

[2] The Court's review is limited to the operative complaint, exhibits attached, and materials incorporated into the operative complaint by reference, and matters of which the court may take judicial notice. *Petrie v. Elec. Game Card, Inc*., 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c). Because the exhibits are attached and incorporated in the Second Amended Complaint, the Court may consider the exhibits when their authenticity is not questioned. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

(*Id*. at 13).  Plaintiff acknowledged that he disobeyed the order to stand down and that he may

have moved his arms and hand while holding the cane, but denied he ever swung the cane at Dr.

Chau.  (*Id*. at 16).  At the disciplinary hearing, Plaintiff stated "I am guilty of verbal assault but

not guilty of a weapons assault."  (*Id*. at 13).  After the hearing, Plaintiff was found guilty of the

RVR.  (*Id*.).

Plaintiff points to Defendant Chau's modification of Plaintiff's medications, termination

of his pain medication, and refusal to treat his hot, swollen knee on April 12, 2018, as evidence of

deliberate indifference to a serious medical condition in violation of the Eighth Amendment.  As

relief, Plaintiff seeks a trial by jury and unspecified damages.  (*Id*. at 10).

**B.  Defendant's Proposed Expert Testimony**

Defendants seek to qualify Dr. Edward Younger III as an expert based on his education,

background, training, knowledge, and substantial experience, coupled with his review of

Plaintiff's medical records.[3]  (Doc. No. 60-3 at 11); (Doc. No. 60-5 at 1 ¶ 3).  Fed. R. Evid. 702

requires that expert testimony be both "reliable and relevant" whether based on scientific,

technical, or other specialized knowledge."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,

149 (1999).

Dr. Younger has been licensed to practice medicine in California since 1981.  (Doc. No.

60-5 at 1 ¶ 2).  He has been board-certified in orthopedic surgery since 1989.  (*Id*.).  (Doc. No.

60-5 at 8).  Younger has experience as an emergency physician, has been Chairman of the

Division of Orthopaedic Surgery at Mercy San Juan, and was in private medical practice for 31

years.  (*Id*. at 7-8).  In formulating his opinions, Dr. Younger reviewed Plaintiff's medical records

and imaging studies from October 31, 2013 through February 28, 2023, as well as Plaintiff's

---

[3]  Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify
if the form of an opinion or otherwise if:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to
    understand the evidence or to determine a fact in issue;
    (b) the testimony is based upon sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the witness has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702.

deposition testimony and the April 12, 2018 incident report.  (*Id*. at 2 ¶¶ 4).

The Court accepts Dr. Younger's opinion as expert testimony under Federal Rules of Evidence 702 as to the medical care rendered by Defendant to Plaintiff, to the extent relevant.

**D. Undisputed Material Facts**

Defendant provided a statement of undisputed material facts.  (Doc. No. 60-2).  Each listed fact cites to the operative supporting document and is gleaned from sworn declarations, Plaintiff's medical records, deposition testimony, and the Second Amended Complaint.  (*See generally id*).  Having reviewed the record, the Court finds the following facts to be material and undisputed, unless otherwise noted.

- Plaintiff Rickey Scott (AR5937) is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and at all times relevant to the SAC was incarcerated at NKSP.  (Doc. No. 28 at 1-10).
- Plaintiff is not a medical professional and has no formal medical training.  (Doc. No. 60-7 at 4:24-25, 5:1-4).
- Defendant J. Chau is a physician and surgeon licensed by the State of California.  (Doc. No. 60-4 at 1-2 ¶¶ 2-3).
- At the times relevant in this action Dr. Chau was employed by California Correctional Health Care Services ("CCHCS") as a Physician and Surgeon.  (Doc. No. 60-4 at 1-2 ¶ 3).
- Dr. Chau served as Plaintiff's primary care physician (PCP) from approximately January through April 2018.  Dr. Chau had three medical appointments with Plaintiff during this time. (Doc. No. 60-4 at 2-6 ¶¶ 4-5, 8, 12, 18-19, 21).
- A non-party medical provider first prescribed Plaintiff Tylenol with Codeine (also known as "Tylenol 3") on December 16, 2016, in connection with Plaintiff's complaints of back pain, hip pain, and general osteoarthritis. (Doc. No. 60-7 at 12:8-13, 24- 25; 13:1-21; 14:13-20; 15:7-10; 16:10-20, 17:17-20); (Doc. No. 60-4 at 3 ¶ 10); (Doc. No. 60-5 at 2 ¶ 5).
- Tylenol with Codeine is a narcotic pain medication that is used in some settings to relieve severe pain.  (Doc. No. 60-7 at 25:22-24); (Doc. No. 60-4 at 3 ¶ 10).

9

- Per community medical practice guidelines, long-term opioid therapy is not the preferred course of treatment for chronic, non-cancerous pain.  Tylenol with Codeine is an addictive narcotic that can lose its efficacy over time.  It is also associated with an increased risk of serious opioid-related harm to patients and can perpetuate addiction.  Medical guidelines recommend treating chronic pain with non-opiate pain medications, such as anti-inflammatory medications or regular Tylenol.  (Doc. No. 60-7 at 59:18-20); (Doc. No. 60-4 at 3 ¶ 10); (Doc. No. 60-5 at 2-3 ¶¶ 5, 8).

- Plaintiff's Tylenol with Codeine prescription was not intended for long-term use.  (Doc. No. 60-7 at 15:11-16; 36:12-19).

- Plaintiff underwent curative Harvoni treatment for Hepatitis C between May 2017 and September 2017.  Plaintiff received his last dose of Harvoni on September 18, 2017.  Plaintiff was undetectable for Hepatitis C by December 20, 2017.  (Doc. No. 60-7 at 21:19-22, 22: 6-19); (Doc. No. 60-5 at 3 ¶ 9).

- No medical provider ever informed Plaintiff that Tylenol with Codeine was the only form of pain medication that Plaintiff could take following his Harvoni treatment in September 2017. (Doc. No. 60-7 at 26:2-5); (Doc. No. 60-4 at 4 ¶ 13).

- Plaintiff first saw Dr. Chau for medical care on February 8, 2018[4], in connection with his routine chronic care program appointment and request for therapeutic shoes.  Plaintiff discussed his history of chronic back pain, hip pain, and osteoarthritis with Dr. Chau.  Plaintiff did not have any prior history of back or hip surgery and did not report any falls to Dr. Chau.  Plaintiff took Tylenol with Codeine for pain control, which had been previously prescribed at a dosage of two, 30-milligram tablets taken three times per day.  (Doc. No. 60-7 at 18:9-18; 19: 11-13); (Doc. No. 60-4 at 3 ¶¶ 8-11); (Doc. No. 60-5 at 2 ¶ 6).

---

[4] The Court notes that, according to Defendant's statement of undisputed facts, he became Plaintiff's PCP in January 2018 but did not see Plaintiff for an appointment until February 2018.  To the extent these facts present an inconsistent timeline, the Court does not find the inconsistency to be material.

- At the February 8, 2018 physical exam, Dr. Chau observed that Plaintiff had a normal gait and could move at a moderate pace with the assistance of his cane.  Plaintiff reported that he was also able to program, ambulate with the use of his cane, shower, dress himself, groom himself, walk to the medication line, and independently perform all activities of daily living.  (Doc. No. 60-7 at 19:25, 20:1-14, 23:8-25, 24:1-8); (Doc. No. 60-4 at 3 ¶ 9).

- Given Plaintiff's functional ability and stable condition, Dr. Chau assessed that Tylenol with Codeine was not medically necessary to treat Plaintiff's chronic, arthritic pain.  Dr. Chau tapered Plaintiff's Tylenol with Codeine to one, 30-milligram tablet taken three (3) times a day.  Dr. Chau also recommended activity modifications and ordered a follow up visit in four to five weeks.  (Doc. No. 60-7 at 30:16-24); (Doc. No. 60-4 at 3 ¶¶ 10-11).

- Plaintiff's second medical encounter with Dr. Chau took place on March 12, 2018.  Dr. Chau observed that Plaintiff had a stable gait, could move at a moderate pace with the use of his cane, and denied having any falls or weakness.  Dr. Chau documented that Plaintiff's osteoarthritis and hip pain were stable and that Plaintiff remained functional. (Doc. No. 60-4 at 4 ¶ 12); (Doc. No. 60-5 at 2 ¶ 7).

- After discussing the matter with Plaintiff, Dr. Chau discontinued Plaintiff's Tylenol with Codeine prescription in its entirety on March 12, 2018. (Doc. No. 60-4 at 4 ¶ 12).

- As a substitute for Tylenol with Codeine, Dr. Chau prescribed Plaintiff 650 mg of Tylenol, to be taken three (3) times a day, for pain management. (Doc. No. 60-7 at 31:21-25, 32:1-3); (Doc. No. 60-4 at 4 ¶ 12).

- Tylenol (without Codeine) was proper for Plaintiff based on his medical history.  Tylenol is a commonly used non-opioid analgesic and has few side effects when used appropriately.  Prescribing Tylenol for pain control did not cause Plaintiff any harm or injury, let alone spontaneous swelling to his right knee.  (Doc. No. 60-7 at 27:2-12); (Doc. No. 60-4 at 4 ¶ 13); (Doc. No. 60-5 at 3 ¶ 9).

- Plaintiff also had access to Naproxen (Aleve) for pain relief, which he obtained from the facility's canteen free of charge. (Doc. No. 60-7 at 27:14-25, 28:1-9, 41:13-25, 42:1).

- The decision to taper Plaintiff's Tylenol with Codeine on February 8, 2018, and eventually discontinue the narcotic medication in favor of a non-opioid alternative on March 12, 2018, was medically appropriate to treat Plaintiff's chronic back pain, hip pain, and osteoarthritis. (Doc. No. 60-4 at 4 ¶ 13); (Doc. No. 60-5 at 3 ¶¶ 8-10).

- Plaintiff first raised complaints regarding right knee pain on April 6, 2018.  Plaintiff did not start experiencing right knee pain until three weeks after he was entirely weaned off Tylenol with Codeine. (Doc. No. 60-7 at 33:24-25, 34:1-3, 16-23); (Doc. No. 60-4 at 4 ¶¶ 12, 14); (Doc. No. 60-5 at 3 ¶ 10).

- Plaintiff stated at his deposition that his right knee pain did not arise from an acute knee injury.  (Doc. No. 60-7 at 35:10-18).  He filed a Form 7362 medical services request regarding his right knee pain on April 6, 2018, and acknowledged at his deposition that he did so hoping that Tylenol with Codeine would be reinstated for pain management.  (*Id*. at 36:20-23).  Plaintiff stated at his deposition that he was frustrated Dr. Chau had not endorsed the same pain management approach as his previous medical providers. (*Id*. at 29:21-25).

- Plaintiff subsequently went to the medical clinic on April 10, 2018, regarding his complaints of right knee pain.  Plaintiff did not present with a swollen right knee. (Doc. No. 60-7 at 37:15-22, 38:25, 39:1-8); (Doc. No. 60-4 at 4-5 ¶ 15).

- RN Manigque performed a physical evaluation of Plaintiff's right knee on April 10, 2018, and documented that Plaintiff could ambulate using his cane.  (Doc. No. 60-4 at 4-5 ¶ 15).  Plaintiff exhibited no signs or symptoms of infection to his right knee.  (*Id*. at 5 ¶ 15).  According to her progress notes, RN Manigque advised Plaintiff that he had an upcoming appointment with Dr. Chau and recommended that Plaintiff avoid strenuous activities.  (*Id*.).  Plaintiff indicated to RN Manigque that he would wait for his scheduled appointment with Dr. Chau for a complete evaluation and left the clinic in stable condition.  (Doc. No. 60-7 at 38:20-25, 39:1-14).

- Plaintiff went to the medical clinic the next day, on April 11, 2018.  Plaintiff claimed that he went man down due to right leg pain.  Plaintiff did not present with a swollen right

knee, despite raising related concerns.  (Doc. No. 60-7 at 39:20-25, 40:1-11, 42:9-10); (Doc. No. 60-4 at 5 ¶ 16).

- RN Manigque performed another physical evaluation of Plaintiff's right knee and did not note any signs of inflammation.  Plaintiff could also walk on both of his legs while using his cane and was in no apparent distress when RN Manigque took his vital signs. (Doc. No. 60-7 at 38:20-24); (Doc. No. 60-4 at 5 ¶ 16); (Doc. No. 60-5 at 3-4 ¶ 11).

- Plaintiff asked for Tylenol with Codeine to be reinstated on April 11, 2018, and became argumentative with RN Manigque regarding his pain management.  RN Manigque informed Plaintiff that Dr. Chau would be advised of his complaints and recommended that Plaintiff avoid strenuous activities.  (Doc. No. 60-7 at 41:2-12); (Doc. No. 60-4 at 5 ¶ 16).

- Plaintiff left the clinic on April 11, 2018 with a stable gait and in no respiratory distress. Dr. Chau was subsequently informed of Plaintiff's complaints and Plaintiff was scheduled for an appointment on April 16, 2018.  (Doc. No. 60-4 at 5 ¶¶ 16-17).

- Plaintiff continued to take Tylenol and Naproxen for pain relief. (Doc. No. 60-7 at 41:12-25, 42:1).

- On April 12, 2018, Plaintiff went man down in his housing unit.  LVN Robinson responded to the corresponding medical alarm at approximately 2:37 PM, and transported Plaintiff to the facility A medical clinic for a walk-in evaluation with Dr. Chau.  (Doc. No. 28 at 15); (Doc. No. 60-6 at 2 ¶ 6).

- Nursing staff promptly took Plaintiff's vital signs.  Plaintiff's temperature was within normal limits, and there was no sign of swelling, bruising, or discoloration to his right knee.  Plaintiff complained that his right knee had been causing him problems and reported that his legs had given out on him.  Plaintiff did not complain that he suffered from any acute injuries or that he had sustained any serious trauma to his right knee. (Doc. No. 28 at 15); (Doc. No. 60-7 at 47:21-25, 48:1-5, 49:9-20); (Doc. No. 60-6 at 3-4 ¶¶ 7, 10 11-12).

- After LVN Robinson apprised Dr. Chau of Plaintiff's condition, Dr. Chau evaluated Plaintiff in the vitals sign area.  Dr. Chau did not observe any signs of acute injury or swelling to Plaintiff's right knee.  Plaintiff's condition was not life-threatening, emergent, or urgent, and appeared to be largely unchanged from when he was evaluated by RN Manigque the day before.  (Doc. No. 60-4 at 5-7 ¶ 18-19, 22); (Doc. No. 60-5 at 4 ¶ 12); (Doc. No. 60-6 at 3-4 ¶¶ 8, 12-13).

- Plaintiff told Dr. Chau that he attributed his right knee condition to Dr. Chau's discontinuation of Tylenol with Codeine.  Plaintiff asked if Dr. Chau was going to put him back on the narcotic pain medication.  (Doc. No. 28 at 16); (Doc. No. 60-7 at 52:3-10); (Doc. No. 60-4 at 6 ¶ 19).

- Dr. Chau understood and believed that Plaintiff's complaints pertained to chronic pain, as opposed to an acute knee injury or condition. (Doc. No. 60-4 at 6-7 ¶ 21-22).

- Dr. Chau determined that reinstating opioid therapy for Plaintiff's pain management was not clinically indicated on April 12, 2018. (Doc. No. 60-4 at 7 ¶ 22).  Upon reviewing Plaintiff's medical records from April 2018, Dr. Younger opined that given the lack of any significant knee trauma or acute knee injury, there was no justification for reinstating Plaintiff's prescription for Tylenol with Codeine on April 12, 2018.  (Doc. No. 60-5 at 4 ¶ 12).

- Dr. Chau informed Plaintiff that he would not prescribe Tylenol with Codeine.  Before Dr. Chau could discuss a plan of care, Plaintiff became angry and abruptly stood up with no apparent difficulty. (Doc. No. 60-4 at 5-6 ¶ 19); (Doc. No. 60-6 at 3 ¶ 9).

- Plaintiff was able to stand without the use of his assistive device when he engaged Dr. Chau. (Doc. No. 60-7 at 7:25, 8:1, 6-7, 50:18-19, 54:14); (Doc. No. 60-4 at 5-6 ¶ 19); (Doc. No. 60-6 at 3 ¶ 9).

- Dr. Chau feared for his safety when Plaintiff became argumentative during the April 12, 2018 encounter.  Dr. Chau, LVN Robinson, and nearby custody staff thought that Plaintiff was going to strike Dr. Chau with his cane.  (Doc. No. 28 at 13); (Doc. No. 60-7 at 50:18-

14

25, 51:1, 7-8, 53:21-24, 57:9-14, 58:11, 65:19-22); (Doc. No. 60-4 at 5-6 ¶ 19); (Doc. No. 60-6 at 3 ¶ 9).

- Multiple staff members alerted their personal alarms in response to Plaintiff's conduct. The medical encounter ended when custody staff intervened, took Plaintiff to the ground, and restrained him.  (Doc. No. 60-7 at 8:2-3, 53:17-19); (Doc. No. 60-4 at 5-6 ¶ 19); (Doc. No. 60-6 at 3 ¶ 9).

- Plaintiff was charged with, and found guilty of, a rule violation report ("RVR") for assaulting Dr. Chau with a weapon, resulting in the use of force, in connection with the April 12, 2018 incident. (Doc. No. 60-7 at 60:10-14); (Doc. No. 60-4 at 6 ¶ 20).

- Dr. Chau ordered an x-ray of Plaintiff's right knee on April 12, 2018, which was performed on April 13, 2018.  No fracture, dislocation, or acute knee abnormality was present.  The x-ray revealed mild arthritis and chondrocalcinosis in Plaintiff's right knee. (Doc. No. 60-7 at 6:2-6, 61:16-19); (Doc. No. 60-4 at 2, 6 ¶ 21, 38); (Doc. No. 60-5 at 4 ¶ 13).

- The April 12, 2018 visit was the only direct medical encounter that Plaintiff had with Dr. Chau regarding complaints of right knee pain.  Plaintiff did not have any further clinical contact with Dr. Chau and was assigned to a new PCP thereafter. (Doc. No. 60-4 at 3, 4, 5-6 ¶¶ 8, 12, 19, 21).

- No medical provider has prescribed Plaintiff Tylenol with Codeine since he was weaned from the medication on March 12, 2018.  (Doc. No. 60-7 at 28:20-25).

- According to Dr. Younger, even if the April 12, 2018 encounter had not prematurely ended, deferring a comprehensive evaluation of Plaintiff's knee, maintaining Plaintiff's non-narcotic pain management approach until a definite diagnosis could be made would have been a medically reasonable treatment plan.  (Doc. No. 60-5 at 4 ¶ 14).

- According to Dr. Younger, an ice pack and Tylenol with Codeine were not medically necessary to treat Plaintiff's right knee pain on April 12, 2018.  Nor would any failure to provide Plaintiff with an ice pack and/or narcotic pain medication have posed an excessive risk to Plaintiff's health, made his right knee condition worse, or fallen below the standard

15

1  of care for similar complaints. (Doc. No. 60-4 at 6-7 ¶¶ 22-23); (Doc. No. 60-5 at 4-5 ¶¶

2  14-15).

3  • Dr. Younger opined that the overall treatment Dr. Chau provided to Plaintiff, including

4  limitation of activities, use of an ambulatory aid, and non-narcotic pain medications, was

5  medically appropriate. (Doc. No. 60-4 at 7-8 ¶¶ 25-28); (Doc. No. 60-5 at 2-3 ¶ 8).

6  **D.  The Undisputed Facts Show Defendant Did Not Exhibit Deliberate**

7  **Indifference to a Serious Medical Condition**

8  The Court first must consider whether Defendant, as the moving party, has met his initial

9  burden of showing *prima facie* entitlement to summary judgment on the issue of Plaintiff's

10  deliberate medical indifference claim.  *Celotex Corp.*, 477 U.S at 323.  Defendants submit that

11  Plaintiff cannot show a genuine dispute of material fact as to the second prong of medical

12  deliberate indifference—whether Defendant failed to respond to his serious medical condition.

13  *Jett*, 439 F.3d at 1096.  A defendant "cannot be said to have been indifferent" to an inmate's pain

14  if they took steps to address it."  *DeGeorge v. Mindoro*, No. 17-CV-06069-LHK, 2019 WL

15  2123590, at *7 (N.D. Cal. May 15, 2019).  The Court agrees.

16  Construing the evidence in the light most favorable to Plaintiff, the undersigned finds

17  there is no triable issue as to whether Defendant acted with deliberate indifference to Plaintiff's

18  serious medical conditions.  Instead, the record evidence reveals only that Plaintiff disagrees with

19  Defendant Chau's decision to wean him off Tylenol with Codeine ("Tylenol 3") and substitute

20  another medication.  Further, the evidence reveals that despite Plaintiff's behavior during the

21  examination, Defendant Chau still ordered further testing on Plaintiff's knee.

22  1.  Serious Medical Need

23  Defendant does not explicitly dispute that Plaintiff was experiencing a serious medical

24  need during the time he was Plaintiff's primary care physician from January to April 2018.

25  Throughout the events at issue here, Plaintiff was suffering from chronic arthritis, which is

26  generally accepted as a serious medical condition.  *See, e.g., Washington v. Brown*, 2009 WL

27  160311, at *14 (E.D. Cal. Jan. 21, 2009) (undisputed that "chronic arthritis constitutes a serious

28  medical need"), report and recommendation adopted, 2009 WL 532615 (E.D. Cal. Mar. 3, 2009);

16

1    *see also McGuckin*, 974 F.2d at 1059-60 ("the existence of chronic and substantial pain are

2    examples of indications that a prisoner has a 'serious' need for medical treatment.").

3         The Court thus assumes for purposes of this Motion that Plaintiff presented with a

4    serious medical need during the relevant time, even if it was a chronic condition rather than an

5    acute knee injury or undiagnosed Elephantiasis, as Plaintiff speculated.

6                        2.   Deliberate Indifference

7         Plaintiff attributes deliberate indifference to Defendant Chau for altering Plaintiff's

8    medical prescriptions in February and March 2018, and then refusing to treat Plaintiff on April

9    12, 2018.  (*See generally* Doc. No. 28).  The undisputed facts, however, reflect that Dr. Chau

10   provided Plaintiff reasonable medical treatment throughout his time as Plaintiff's primary care

11   physician, and that this treatment fell within the standard of care.

12                    a.   Defendant's Decision to Taper Plaintiff's Use of Tylenol 3

13        At the February 8, 2018 routine appointment, Dr. Chau observed that Plaintiff had a

14   normal gait and could move at a moderate pace with the assistance of his cane.  Plaintiff reported

15   that he was also able to program, ambulate with the use of his cane, shower, dress himself, groom

16   himself, walk to the medication line, and independently perform all activities of daily living.

17   (Doc. No. 60-7 at 19:25, 20:1-14, 23:8-25, 24:1-8); (Doc. No. 60-4 at 3 ¶ 9).  Plaintiff suffered

18   from chronic arthritis, which Chau concluded did not require continued treatment with opioids

19   and determined that it would be appropriate to taper Plaintiff's use of Tylenol 3.  (Doc. No. 60-7

20   at 30:16-24); (Doc. No. 60-4 at 3 ¶ 10-11).  Dr. Chau also recommended activity modifications

21   and ordered a follow up visit in four to five weeks.  (Doc. No. 60-7 at 30:16-24); (Doc. No. 60-4

22   at 3 ¶¶ 10-11).  Plaintiff has not refuted this characterization of his condition on February 8, 2018

23   nor the description of Defendant's plan of treatment.  (*See generally* Doc. No. 62).

24        While Plaintiff disagrees with Defendant's decision to taper his use of Tylenol 3, a

25   difference of medical opinion does not amount to deliberate indifference under the Eighth

26   Amendment.  *See Toguchi*, 391 F.3d at 1051.  "Typically, a difference of opinion between a

27   physician and the prisoner — or between medical professionals — concerning what medical care

28   is appropriate does not amount to deliberate indifference."  *Edmo v. Corizon, Inc.*, 935 F.3d 757,

786 (9th Cir. 2019) (citations, quotations and brackets omitted).  "But that is true only if the

dueling opinions are medically acceptable under the circumstances."  *Id*. (citation omitted).  To

determine whether the treatment was medically acceptable, courts must consider "the record, the

judgments of prison medical officials, and the views of prudent professionals in the

field...."  *Id*.  "Accepted standards of care and practice within the medical community are highly

relevant in determining what care is medically acceptable and unacceptable."  *Id*.

Here, Plaintiff does not present any evidence to suggest that Defendant Chau failed to

treat him or that Chau's course of treatment for his chronic arthritis "was medically unacceptable

under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the

prisoner's] health."  *Jackson*, 90 F.3d at 332.  Further, Dr. Younger opined that the decision to

taper Plaintiff off Tylenol 3 was medically appropriate in the circumstances.  (Doc. No. 60-5 at 2-

3 ¶ 8).  Thus, the undisputed facts reflect that Defendant was not deliberately indifferent to

Plaintiff's serious medical condition when he saw Plaintiff on February 8, 2018 and made the

decision to taper Plaintiff from two 30-mg doses of Tylenol 3, three times per day to one 30-mg

dose of Tylenol 3, three times per day.  (Doc. No. 60-7 at 30:16-24); (Doc. No. 60-4 at 3 ¶¶ 10-

11).

### b.  Defendant's Decision to Discontinue Plaintiff's Use of Tylenol 3

When Chau saw Plaintiff approximately a month later, he still had a stable gait, could

move at a moderate pace with the use of his cane, and denied having any falls or weakness.  Dr.

Chau documented that Plaintiff's osteoarthritis and hip pain were stable and that Plaintiff

remained functional. (Doc. No. 60-4 at 4 ¶ 12); (Doc. No. 60-5 at 2 ¶ 7).  Plaintiff has not refuted

this characterization of his condition on March 12, 2018.  (*See generally* Doc. No. 62).  Again,

Dr. Younger's unrefuted expert opinion is that the decision to discontinue Plaintiff use of Tylenol

3 altogether in March 2018 was medically appropriate.  (Doc. No. 60-5 at 2-3 ¶ 8).

Thus, the undisputed facts reflect that Defendant Chau did not exhibit deliberate

indifference when he decided to discontinue Plaintiff's use of Tylenol 3 altogether and instead

prescribe Plaintiff with 650 mg of Tylenol, taken three times per day.  Further, the record reflects

that in addition to the non-opioid medication to address his chronic pain, Plaintiff was able to

1  supplement the prescribed medication with Naproxen that was available from the facility's

2  canteen free of charge.

3                 c.   Defendant's Treatment of Plaintiff on April 12, 2018

4        On April 12, 2018, Plaintiff presented to the NKSP medical clinic with what he states was

5  a "swollen knee, [that] was hot with fever." (Doc. No. 28 at 8).  Upon taking Plaintiff's vital

6  signs, nursing staff noted that Plaintiff's skin was warm, and his temperature was within normal

7  limits.  (Doc. No. 60-6 at 3 ¶ 7).  Upon examining Plaintiff, Defendant Chau "did not observe any

8  swelling, bruising, bleeding, or obvious signs of injury or trauma to [Plaintiff's] right knee."

9  (Doc. No. 60-4 at 5-6 ¶ 19).  This was confirmed by LVN's Robinson evaluation, which found no

10  sign of swelling, bruising, or discoloration to the right leg or knee.  (Doc. No. 60-6 at 3-4 ¶¶ 7,

11  10-12).  Nevertheless, Dr. Chau ordered an x-ray to be taken the next day, which indicated that

12  Plaintiff had mild arthritis and chondrocalcinosis.[5]  (*See* Doc. No. 60-5 at 4 ¶ 13).   The

13  undisputed facts reflect that Defendant examined Plaintiff on April 12, 2018, and despite not

14  observing any signs of injury, nevertheless ordered further testing.

15        Plaintiff speculated that his knee pain and leg swelling were due to Dr. Chau

16  discontinuing Plaintiff's prescription for Tylenol 3 and changing some other unspecified

17  medication.  (Doc. No. 28 at 8).  Thus, liberally construed, Plaintiff alleges that Dr. Chau's

18  decision to taper and discontinue his use of Tylenol 3 reflected deliberate indifference to

19  Plaintiff's chronic arthritis and related pain.  The undisputed facts reflect, however, that Plaintiff

20  did not start experiencing right knee pain until three weeks after he was entirely weaned from

21  Tylenol 3, belying a causal connection between the two. (Doc. No. 60-7 at 33:24-25, 34:1-3, 16-

22  23); (Doc. No. 60-4 at 4 ¶¶ 12, 14).  Moreover, Dr. Younger, the medical expert, opined that

23  "discontinuing [Plaintiff's] Tylenol with Codeine on March 12, 2018 did not cause him to

24  develop increasing pain or an underlying knee condition." (Doc. No. 60-5 at 3 ¶ 10).  Thus, the

25  undisputed record shows there was no causal connection between Defendant Chau's actions and

26

27      [5] "Chondrocalcinosis is a type of arthritis that typically affects the knees and causes flare-ups of pain and
    inflammation."  https://www.medicalnewstoday.com/articles/chondrocalcinosis.

28

Plaintiff's pain and that Defendant Chau's refusal to reinstate Plaintiff's Tylenol 3 prescription
was medically appropriate and did not reflect deliberate indifference.

Based on the record, Defendant has established that he was not deliberately indifferent to
Plaintiff's serious medical need, and Plaintiff has failed to raise a genuine issue for trial that
Defendants' chosen course of treatment to wean Plaintiff off Tylenol 3 and substitute alternative
medical treatment to treat his serious medical condition was medically unacceptable under the
circumstances and chosen in disregard of an excessive risk to Plaintiff's health.   *See, e.g.*, *See
Hutchins Jr. v. Johal*, 2021 WL 4690597 (E.D. Cal. Oct. 7, 2021) (granting defendant's motion
for summary judgment finding defendant was not deliberately indifferent to plaintiff's serious
medical needs when defendant tapered and discontinued plaintiff's morphine prescription)
*findings and recommendation adopted by* 2021 WL 6051696 (E.D. Cal. Jan. 10, 2022);
*DeGeorge v. Mindoro*, 2019 WL 2123590 (N.D. Cal. May 15, 2019) (granting defendants'
motion for summary judgment and finding no deliberate indifference to plaintiff's serious
medical needs when defendants weaned plaintiff off morphine and "took other reasonable steps to
abate plaintiff's pain"); *Wilkins v. Barber*, 2023 WL 1111657, at *18 (E.D. Cal. Jan. 30, 2023),
*report and recommendation adopted*, 2023 WL 2617017 (E.D. Cal. Mar. 23, 2023); *Solomon v.
Negrete*, 2014 WL 546367 (E.D. Cal. Feb. 11, 2014), *findings and recommendations adopted by*
2014 WL 1024567 (E.D. Cal. Mar. 14, 2014) (granting motion for summary judgment on claim
challenging discontinuance of morphine prescription with alternate prescription for
ibuprofen).  *See also Wyres v. Zhang*, 2021 WL 3772387 (S.D. Cal. Aug. 25, 2021); *Montiel v.
Taher-Pour*, 2014 WL 2574533 (E.D. Cal. June 9, 2014), *findings and recommendations adopted
by* 2014 WL 3615801 (E.D. Cal. July 22, 2014) (granting defendants summary judgment on
Eighth Amendment claim challenging abrupt discontinuation of tramadol and four-day taper of
gabapentin, with the use of an alternative prescription for ibuprofen).

The evidence in the record, however, reflects a dispute as to whether Defendant Chau
denied Plaintiff use of an ice pack on April 12, 2018.  (*See* Doc. No. 60-6 at 3 ¶ 8, 10); (Doc. No.
28 at 8); *see Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) ("A verified complaint
may be used as an opposing affidavit under Rule 56.")  Even if Chau prevented Plaintiff from

having an ice pack, not conceded, the undisputed evidence indicates that doing so did not reflect

deliberate indifference.  Given that Plaintiff did not present any acute injury on April 12, 2018,

Dr. Younger opined that "any failure to provide an ice pack and/or Tylenol with Codeine for pain

control was medically acceptable under the circumstances and would not have posed an excessive

risk to Mr. Scott's health on April 12, 2018."  (Doc No. 60-5 at 4 ¶ 14).  Further, the refusal to

provide an ice pack alone under the facts present here does not rise to a level of deliberate

indifference.  *See Jones v. Blanas*, 2007 WL 137168, at *8 (E.D. Cal. Jan. 17, 2007), report and

recommendation adopted, 2007 WL 840782 (E.D. Cal. Mar. 19, 2007) (holding that the

defendant-doctor's refusal to provide an ice pack for plaintiff's sprained ankle did not violate the

Eighth Amendment, as the disagreement over whether an ice pack was medically necessary to

reduce swelling amounted to a difference of opinion regarding the proper course of treatment);

*see also Derello v. Stickley*, 631 F. Supp. 3d 758, 769 (D. Ariz. 2022), appeal dismissed, No. 22-

15379, 2022 WL 19038555 (9th Cir. Oct. 26, 2022) (holding no deliberate indifference when

defendant refused plaintiff's request for ice, as there was no evidence of harm that resulted from

the refusal, or that ice was the only acceptable form of treatment).

Here, the undisputed evidence shows Defendant Chau examined Plaintiff, listened to his

concerns, and ordered further testing to rule out the possibility of injury.  Thus, the Court finds no

genuine dispute that Chau provided adequate medical care on April 12, 2018 and was not

deliberately to Plaintiff's serious medical needs.  To the extent any further examination of

Plaintiff could or should have been made that day, Plaintiff's own aggressive behavior toward Dr.

Chau prevented that from occurring and Plaintiff cannot fault Chau for an incomplete

examination.

Plaintiff generally disputes, without support, that Defendant's actions were medically

appropriate.  Except where the conduct at issue is within the common knowledge of laymen,

however, the standard of care can only be proven by expert testimony.  *See Hutchinson v. U.S.*,

838 F.2d 390, 392 (9th Cir. 1988).  Thus, "[w]hen a defendant moves for summary judgment and

supports his motion with expert declarations that his conduct fell within the community standard

of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting

1  expert evidence." *Id*.

2      Here, Plaintiff provides no evidence and no expert testimony to rebut Dr. Younger's

3  expert opinion.  The appropriate management of Plaintiff's pain medication and treatment of

4  Plaintiff's chronic arthritis is not something within a layperson's common knowledge.  Thus,

5  Plaintiff was required to provide expert testimony to rebut Dr. Younger's opinion that the medical

6  care provided by Defendant Chau fell within the standard of care.  *See Hesse v. Cnty. of*

7  *Sacramento*, 2024 WL 494007, at *7 (E.D. Cal. Feb. 8, 2024), report and recommendation

8  adopted, 2024 WL 1219078 (E.D. Cal. Mar. 21, 2024).  Plaintiff did not.

9      The overwhelming and undisputed record evidence shows that Defendant Chau provided

10  appropriate medical care for Plaintiff's pain and chronic conditions while serving as Plaintiff's

11  primary care physician.  On April 12, 2018, Chau properly examined and referred Plaintiff for

12  prompt, additional testing for his symptoms, even after Plaintiff allegedly assaulted him.  Taken

13  together, the record refutes Plaintiff's claim of medical deliberate indifference.  Defendant is

14  accordingly entitled to summary judgment on this basis.

15      **E.  Qualified Immunity**

16      Because the Court finds no genuine dispute of material fact that Defendant Chau was not

17  deliberately indifferent to Plaintiff's serious medical condition, and thus that Chau did not violate

18  Plaintiff's constitution rights, the Court need not reach Defendant's affirmative defense of

19  qualified immunity.

20      **CONCLUSION**

21      Construing the evidence in the light most favorable to Plaintiff, the Court finds there is no

22  triable issue as to whether Defendant Chau acted with deliberate indifference to Plaintiff's serious

23  medical condition.  The record demonstrates Plaintiff received adequate medical care for his

24  chronic arthritis and that his decision to taper, then discontinue Plaintiff's use of Tylenol 3 in

25  favor of Tylenol was medically appropriate and did not reflect deliberate medical indifference in

26  violation of the Eighth Amendment.  The undisputed record also shows that Chau's treatment of

27  Plaintiff's symptoms on April 12, 2018 was appropriate and fell within the standard of care.

28      *////*

Accordingly, it is hereby **RECOMMENDED**:

1.  Defendant Chau's motion for summary judgment (Doc. No. 60) be GRANTED.

2.  The Clerk of Court terminate any pending motions, vacate all deadlines, enter judgment in Defendant's favor and close this case.

**NOTICE TO PARTIES**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id.*; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


Dated:    September 9, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

23